IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAKIA MCCLAIN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>L. GONZALES, et al.,<br><br>　　　　Defendants.<br>_____/ | Case No. 1:07-cv-00945 JLT (PC)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>ORDER DISMISSING CERTAIN CLAIMS AND DEFENDANTS SUA SPONTE<br><br>(Doc. 51) |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding on the following claims: (1) the use of excessive force in violation of the Eighth Amendment by Defendants Gonzales, Thomas, Beltran, Marin, Smith, Sullivan, Montoya, and Peters; (2) deliberate indifference to serious medical needs in violation of the Eighth Amendment by Defendants Sullivan, Montoya, and Peters; and (3) retaliation in violation of the First Amendment by Defendants Gonzales, Thomas, Beltran, Marin, Smith, Sullivan, Montoya, and Peters. (Doc. 1 at 19-21; Doc. 14.) Now pending before the Court is Defendants' motion for summary judgment. Plaintiff has opposed the motion, and Defendants have filed a reply. For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

I.　　BACKGROUND

　　A.　　Factual Background

This action is proceeding on Plaintiff's original complaint. (Doc. 1.) Plaintiff's allegations are

1

1  as follows.  Plaintiff submitted an inmate grievance against Medical Technical Assistant Osborne on
2  August 21, 2006 and an inmate grievance against Correctional Officer Aguilar two months later, on
3  October 29, 2006.  (See id. at 18; Doc. 51-8 at 49:1-9; Doc 72 at ¶ 2.)  In his grievance against Officer
4  Aguilar, Plaintiff complained that Officer Aguilar was threatening him and falsely accusing him of
5  masturbating.  (Doc. 72 at ¶ 2.)

6  On October 30, 2006, Plaintiff's yard time was terminated early.  (Doc. 1 at 7.)  Defendants
7  Gonzales and Beltran approached Plaintiff's exercise cage and prepared to escort Plaintiff back to his
8  cell.  (Id.)  Defendant Gonzales handcuffed Plaintiff and tightened the handcuffs so that they bit into
9  Plaintiff's skin.  (Id.)  At that point, Plaintiff requested to speak to a sergeant, but Defendant Gonzales
10 denied the request.  (Id.)

11 As Plaintiff was being escorted to his cell, Defendant Thomas shouted from the control booth,
12 "We should beat your ass.  Fucking cry baby."  (Id. at 8.)  Defendant Marin also said, "You complaining
13 piece of shit.  You need your ass kicked.  I could do it for you."  (Id.)  Plaintiff renewed his request to
14 speak to a sergeant, but Defendant Gonzales denied Plaintiff's request once again.  (Id.)

15 When Plaintiff reached his cell, he stopped and waited for Defendant Thomas to open the cell
16 door from the control booth.  (Id.)  At that time, Defendant Gonzales gripped Plaintiff's handcuffs tightly
17 and caused sharp pain in Plaintiff's wrists.  (Id. at 9.)  When the cell door was finally open, Defendant
18 Gonzales instructed Plaintiff to enter.  (Id.)  Plaintiff took one step forward, and Defendant Gonzales
19 tugged on the handcuffs, causing Plaintiff to bend forward in pain.  (Id.)  Plaintiff yelled out, "You['re]
20 hurting me!"  (Id.)

21 Defendant Thomas began to shut Plaintiff's cell door from the control booth.  (Id.)  Defendant
22 Gonzales then tugged on the handcuffs again.  (Id.)  This caused Plaintiff to lose his balance and fall to
23 the ground.  (Id. at 10.)  In response, Defendant Gonzales flipped Plaintiff onto his stomach and used
24 his weight to pin Plaintiff to the ground.  (Id.)  Meanwhile, the cell door continued to close and began
25 crushing Plaintiff's legs.  (Id.)  Plaintiff screamed out in pain.  (Id.)  The inmates who were observing
26 these events yelled to Defendant Thomas that the cell door needed to be reopened.  (Id.)

27 The door was eventually reopened.  (Id.)  Defendant Gonzales then grabbed Plaintiff's left leg,
28 dragged Plaintiff away from the cell door, and threw Plaintiff's leg against the floor.  (Id. at 11.)  Next,

Defendant Beltran grabbed Plaintiff's legs and placed them in iron restraints while Defendant Marin brought a wheelchair. (Id.) Although Plaintiff cried out that he needed medical attention, his requests were ignored. (Id.) Defendant Gonzales instructed Plaintiff to stand up and climb into the wheelchair. (Id.) Plaintiff asserted that he was unable to climb into the wheelchair because of the pain and the leg restraints. (Id.) In response, Defendants Gonzales and Marin grabbed Plaintiff's arms and pulled him into the wheelchair. (Id.) Defendant Beltran, meanwhile, continued to hold the restraints, which were causing pain and pressure in Plaintiff's legs, arms, shoulders, and wrists. (Id. at 12.) Once he was in the wheelchair, Plaintiff was moved to the rotunda where he asked for medical attention for the next fifteen to twenty minutes. (Id.) Eventually, Plaintiff blacked-out. (Id.)

When Plaintiff regained consciousness about ten minutes later, he found himself on the ground with Defendant Sullivan present. (Id.) Defendant Sullivan asked Plaintiff what had happened. (Id.) Plaintiff responded that his leg was in serious pain. (Id.) Defendant Sullivan then left to make a phone call. (Id.) When she returned, Defendant Sullivan told Plaintiff that he would need to get back into the wheelchair if he wanted medical attention. (Id.) Plaintiff reiterated that he could not get up because of the pain and the restraints. (Id. at 13.) Defendant Sullivan was convinced that Plaintiff had not suffered an injury and was merely faking the pain. (Id.)

Defendant Peters arrived minutes later. (Id.) Until this point, Defendant Peters had not been involved in any of the prior events. (Id.) Plaintiff informed Defendant Peters that he was in need of medical care. (Id.) Defendant Peters left to speak with Defendant Sullivan privately. (Id.) Defendant Sullivan returned and told Plaintiff that a nurse was on the way. (Id.)

Defendant Montoya, a registered nurse, soon arrived and asked Plaintiff what was the matter. (Id. at 14.) Plaintiff explained that his legs were in pain and his hands were numb. (Id.) Defendant Montoya pulled-up Plaintiff's undershorts, examined Plaintiff's legs, and concluded that nothing was wrong with Plaintiff. (Id.) Defendant Montoya informed Defendant Peters that Plaintiff was fine and was refusing medical attention based upon his refusal to sit in the wheelchair. (Id.) In response, Plaintiff asserted that Defendant Montoya was lying. (Id.)

Defendant Smith then pulled Plaintiff off the floor and placed him in the wheelchair. (Id. at 14-15.) Defendant Smith grabbed Plaintiff's legs and forced them to bend at the knees so that Plaintiff's

3

feet would rest on the wheelchair's footrest. (Id. at 15.) Plaintiff leaned forward and cried out in pain. (Id.) Defendant Smith then took a bed sheet, wrapped it around Plaintiff, pulled it back, and tied it to the wheelchair so that Plaintiff would sit upright in the wheelchair. (Id.)

Defendant Peters ordered Plaintiff to be returned to his cell. (Id. at 15.) At that point, Plaintiff threatened to commit suicide, knowing that it was prison protocol for suicidal inmates to be immediately taken to the emergency room. (Id. at 15.) Accordingly, Defendant Peters ordered Plaintiff to be taken to the prison hospital. (Id.)

At the prison hospital, a doctor examined Plaintiff and noticed swelling in Plaintiff's left knee. (Id. at 16.) Plaintiff was taken to the x-ray lab, and an x-ray was taken of Plaintiff's left knee. (Id.) The doctor informed Plaintiff that he suffered a serious injury and that he would need further treatment at an outside hospital. (Id.) Later that night, Plaintiff was taken to Mercy Hospital. (Id.) There, doctors confirmed that Plaintiff suffered a patella fracture in his left knee. (Id. at 17.) Two months later, the doctors also confirmed that Plaintiff's condition required surgery. (Id.)

**B.   Procedural History**

Plaintiff filed his complaint and initiated this action on June 29, 2007. (Doc. 1.) On February 2, 2009, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that it stated cognizable claims against Defendants Gonzales, Thomas, Beltran, Martin, Smith, Peters, Sullivan, and Montoya for violations of the First and Eighth Amendments. (Doc. 14.) Defendants filed their answer on May 1, 2009. (Doc. 28.)

On August 31, 2010, Defendants filed the instant motion for summary judgment. (Doc. 51.) Plaintiff filed an opposition to the motion on January 18, 2011 (Doc. 71) and a declaration in support of his opposition on January 24, 2011 (Doc. 72.) In response, Defendants filed a reply on January 26, 2011. (Doc. 73.)

**II.   LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute

4

regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257 (1986)) (emphasis in the original). Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. Stefanchik, 559 F.3d at 929. Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

5

## III.   DISCUSSION

### A.   Eighth Amendment – Excessive Force

When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).  In determining whether a prison official has used excessive force, "the core judicial inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Factors the court may consider in making this determination include: (1) the extent of the injury; (2) the need for force; (3) the relationship between the need and the amount of force used; (4) the threat as reasonably perceived by prison officials; and (5) any efforts made by prison officials to temper the severity of a forceful response.  Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).  When reviewing these factors, the court must remember that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley, 475 U.S. at 320-21 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

#### 1.   Defendant Gonzales

The first component of Plaintiff's excessive force claim against Defendant Gonzales centers on Plaintiff's allegation that Defendant Gonzales used overly tight handcuffs on Plaintiff while escorting him to his cell.  See LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000) ("[T]ight handcuffing can constitute excessive force.").  Plaintiff alleges in this regard that Defendant Gonzales tightened the handcuffs "all the way" so that the handcuffs bit into Plaintiff's skin and wrists. (Doc. 1 at 7.[1])  Plaintiff declares that he "let out a scream" and told Defendant Gonzales that the handcuffs were too tight. (Doc. 72 at ¶ 12.)  Plaintiff asserts that he asked Defendant Gonzales to loosen the handcuffs and that he wanted to speak to a sergeant, but the defendant simply replied, "You're not speaking to the sergeant." (Id. at ¶ 12-13.)

---

[1] Because Plaintiff is proceeding pro se in this action, the Court must consider as evidence in his opposition to summary judgment all of his contentions offered in motions and pleadings where (1) his contentions are based on personal knowledge and set forth facts that would be admissible in evidence; and (2) he attested under penalty of perjury that the contents of his motions and pleadings are true and correct.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

1    These events are corroborated by Inmate Fields, who has provided a declaration recounting the
2    incident.  (See Doc. 71 at 17.)  Inmate Fields asserts that Plaintiff was handcuffed at the exercise cage
3    by Defendants Gonzales and Beltran.  (Id.)  Inmate Fields then heard Plaintiff complain to Defendant
4    Gonzales that the handcuffs were biting into Plaintiff's skin and that he wanted to speak to a sergeant.
5    (Id.)  According to Inmate Fields, Defendant Gonzales replied that Plaintiff was not going to see anyone
6    while being escorted to his cell.  (Id.)

7    In moving for summary judgment, Defendant Gonzales contests the notion that the handcuffs
8    were too tight.  (See Doc. 51-1 at 5.)  According to Defendant Gonzales, when Plaintiff complained of
9    the tightness of the handcuffs, he checked the handcuffs and did not believe that they were incorrectly
10   applied or overly tight.  (Doc. 51-3 at ¶ 4-5.)  Thus, in Defendant Gonzales' view, there is simply no
11   evidence that he handcuffed Plaintiff maliciously and sadistically for the purpose of causing Plaintiff
12   harm.  (See Doc. 51-1 at 5.)

13   The parties clearly present different version of the events.  Plaintiff's version of the facts suggest
14   that Defendant Gonzales purposefully used tight handcuffs to cause Plaintiff pain.  On the other hand,
15   Defendant Gonzales' version of the facts suggests that the tightness of the handcuffs was not excessive
16   and was reasonable in order to escort Plaintiff securely to his cell.  At this juncture, the Court cannot
17   decide which party's version is closer to the truth.  The issue of credibility, which this claim ultimately
18   hinges upon, is one for the jury.  Accordingly, Defendant Gonzales is not entitled to summary judgment
19   on this claim.  See LaLonde, 204 F.3d at 960 (noting that summary judgment is generally not appropriate
20   for a tight handcuffing claim because "[t]he issue . . . is usually fact-specific and is likely to turn on the
21   credibility of witnesses.").

22   The second component of Plaintiff's excessive force claim against Defendant Gonzales relates
23   to the defendant's use of force when Plaintiff reached his cell.  Plaintiff alleges that, for no reason other
24   than retaliation, Defendant Gonzales tugged on Plaintiff's handcuffs, which caused Plaintiff to lose his
25   balance and fall to the ground.  (Doc. 1 at 10.)  Plaintiff asserts that Defendant Gonzales then flipped
26   Plaintiff onto his stomach and used his weight to pin Plaintiff to the ground.  (Id.)  Plaintiff asserts that
27   Defendant Gonzales allowed the cell door to crush him for a period of time, then dragged Plaintiff by
28   the legs, and then threw Plaintiff's leg against the ground.  (Id. at 11.)

In moving for summary judgment, Defendant Gonzales declares that he did not intentionally cause Plaintiff to fall to the ground. (Doc. 51-1 at 5.) Defendant Gonzales asserts further that pinning Plaintiff to the ground after he fell and dragging Plaintiff away from the cell door was necessary in order to secure Plaintiff and to ensure the safety of others. (Id. at 6.) Defendant Gonzales emphasizes that he could not have known whether Plaintiff's fall was accidental or a diversionary tactic that presented an actual security risk. (See id.)

Defendant Gonzales also presents evidence suggesting that Plaintiff did not suffer any injury as a result of these events. According to Dr. Amirpour, who examined Plaintiff at Mercy Hospital a day after the alleged excessive force, the x-ray of Plaintiff's left knee was normal with no indication of any fracture. (Doc. 51-9 at 3.) Dr. Amirpour also noted in his report that he did not observe any bruises, cuts, lacerations, or areas of tenderness with respect to Plaintiff's left leg. (Id.) Finally, Dr. Amirpour noted that there is evidence of old Osgood-Schlatter disease in Plaintiff's left knee, but no surgery was required. (Id.)

After considering the evidence presented in relation to the five factors set forth in Whitley, the Court concludes that genuine issues of material fact preclude summary judgment on this claim. First, there is a genuine dispute as to the extent of Plaintiff's injuries. As indicated above, Defendant Gonzales presents the report of Dr. Amirpour as support for his contention that Plaintiff suffered no injury. In contrast, Plaintiff has attached to his complaint a radiology report taken on October 30, 2006, the same day as the alleged incident of excessive force. (Doc. 1 at 42.) That report indicates swelling, fluid build-up, and a fracture involving the spur arising from Plaintiff's tibial tuberosity. (Id.)

Second, there is a genuine dispute as to whether force was required under the circumstances. Defendant Gonzales declares that pinning Plaintiff to the ground was necessary because he could not be sure whether Plaintiff presented a real security risk. Thus, in Defendant Gonzales' view, his actions were taken solely to ensure institutional safety. Plaintiff, however, paints a different picture. Plaintiff asserts that Defendant Gonzales caused Plaintiff to fall to the ground. Plaintiff asserts further that Defendant Gonzales then used that event to justify additional force against Plaintiff. In Plaintiff's view, Defendant Gonzales's actions were motivated solely by retaliation.

These factual disputes must be resolved by the jury. A reasonable jury could find in Plaintiff's

favor based on the evidence presented.  Accordingly,  Defendant Gonzales is not entitled to summary judgment on this claim.

### 2. Defendant Thomas

Defendant Thomas argues that he is entitled to summary judgment on Plaintiff's excessive force claim. Defendant Thomas maintains that he could not have violated the Eighth Amendment because he closed the door before Plaintiff fell to the ground and he was never aware that Plaintiff was in the path of the cell door. (Doc. 51-1 at 6; Doc. 51-4 at ¶ 6.)

Plaintiff has provided sufficient evidence to create a genuine dispute as to whether Defendant Thomas was aware that Plaintiff was being crushed by the cell door yet failed to promptly reopen the door to prevent Plaintiff from being injured. Plaintiff asserts in his declaration that he yelled out loud eight to ten times that the cell door was crushing his legs. (Doc. 72 at ¶ 29.) In addition, Plaintiff asserts that other inmates witnessing the events shouted to Defendant Thomas in the control booth to reopen Plaintiff's cell door. (Id.)

Plaintiff's assertions are substantiated by other inmates.  Inmate Guzman declares that he heard Plaintiff "let out a loud scream" that his legs were being crushed by the steel cell doors. (Doc. 1 at 83.) Inmate Guzman avers that while Plaintiff was yelling in pain, Defendant Thomas was "pushing buttons and laughing." (Id.)

Inmate Fred Smith provides a similar account of the events.  In his declaration, Inmate Smith asserts that he heard Plaintiff yell out "over and over" that his legs were being crushed by the cell door. (Doc. 1 at 91.) Inmate Smith asserts further that he yelled to Defendant Thomas in the control booth to open Plaintiff's cell door. (Id.) However, according to Inmate Smith, Defendant Thomas simply gave him the finger. (Id.)

Based on the evidence presented, a reasonable jury could conclude that Defendant Thomas was aware that Plaintiff was being crushed by the cell door.  A reasonable jury could therefore also conclude that crushing Plaintiff's legs with the cell door was unnecessary and that Defendant Thomas failed to take any steps to temper the severity of the injuries Plaintiff sustained. Accordingly, the Court finds that Defendant Thomas is not entitled to summary judgment on this claim.

///

### 3. Defendant Beltran

Defendant Beltran argues that he is entitled to summary judgment on Plaintiff's excessive force claim. Defendant Beltran asserts that the force he used was minimal and necessary to restrain Plaintiff's legs and to secure Plaintiff in the wheelchair. (Doc. 51-1 at 11.)

Drawing all reasonable inferences in Plaintiff's favor, a reasonable jury could find based on the evidence presented that Defendant Beltran used force maliciously and sadistically to cause Plaintiff harm. There is no indication at the time Defendant Beltran placed leg restraints on Plaintiff that such force was reasonable or necessary. There are no facts or evidence demonstrating that Defendant Beltran reasonably perceived Plaintiff to be a threat. Quite the contrary. Plaintiff alleges that he was simply laying on the ground handcuffed, in pain, and crying for medical attention when Defendant Beltran decided to fasten Plaintiff's legs in additional metal restraints. (Doc. 1 at 11.)

Defendant Beltran argues that the force he used was de minimus.[2] However, Plaintiff asserts in his verified complaint that Defendant Beltran pulled on the restraints with such force that Plaintiff felt pressure in his wrists, causing him to "yell and scream in excruciating pain." (Id.) It can be reasonably inferred from this that Defendant Beltran used more than a de minimus amount of force in restraining Plaintiff.

Thus, without more, the Court cannot conclude that a reasonable jury could not find for Plaintiff based on the evidence presented. Accordingly, Defendant Beltran is not entitled to summary judgment on this claim.

### 4. Defendant Marin

Defendant Marin argues that he is entitled to summary judgment on Plaintiff's excessive force claim. Defendant Marin maintains that the force he used was minimal and necessary to secure Plaintiff in the wheelchair. (Doc. 51-1 at 11.)

The undisputed evidence establishes that Defendant Marin did not apply force maliciously or

---

[2] In Defendants' Reply, they argue that a "discernable" injury is required to demonstrate that excessive force was used. (Doc. 73 at 3-4). Not so. Instead, the malicious and sadistic use of force by prison officials always violates contemporary standards of decency (Hudson v. McMillian, 503 U.S. 1, 9 (1986)), even where there is no visible physical injury resulting. Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (excessive force standard examines de minimis uses of force, not de minimus injuries).

10

1  sadistically to cause Plaintiff harm. After Defendant Gonzales dragged Plaintiff away from the door,
2  Plaintiff complained that he was in need of medical attention. (Doc. 1 at 11.) In response, Defendant
3  Gonzales stated that Plaintiff needed to stand up and sit in the wheelchair if he wanted attention. (Id.)
4  Plaintiff, however, asserted that he could not stand up on his own because he was in intense pain and
5  because his hands and legs were in restraints. (Id.) Defendant Marin therefore grabbed Plaintiff by the
6  arms, lifted Plaintiff off the ground, and placed Plaintiff in the wheelchair. (Id. at 11-12.)

7  Under these circumstances, Defendant Marin's actions were entirely reasonable. Some quantum
8  of force was clearly needed in this situation. Plaintiff himself made it clear that he could not stand and
9  sit in the wheelchair on his own. Therefore, it was reasonable for Defendant Marin to lift Plaintiff off
10 the floor and place him in the wheelchair so that he could be transported elsewhere. Notably, Plaintiff
11 does not even allege that he was injured as a result of Defendant Marin's actions.

12 Accordingly, because no reasonable jury could conclude based on the evidence presented that
13 Defendant Marin used malicious and sadistic force against Plaintiff, Defendant Marin is entitled to
14 summary judgment on this claim.

15              5.   Defendant Smith

16 Defendant Smith argues that he is entitled to summary judgment on Plaintiff's excessive force
17 claim. Defendant Smith maintains, like Defendant Marin, that the force he used was minimal and
18 necessary to secure Plaintiff in the wheelchair. (Doc. 51-1 at 11.)

19 The undisputed evidence establishes that Defendant Smith did not apply force maliciously or
20 sadistically to cause Plaintiff harm. Defendant Smith faced a situation similar to the one confronted by
21 Defendant Marin. After being transported to the rotunda, Plaintiff was on the floor, again complaining
22 that he needed medical attention. (Doc. 1 at 12.) In response, Defendants Sullivan and Montoya told
23 Plaintiff that he needed to stand and sit in the wheelchair if he wanted treatment. (Id. at 12-14; Doc. 51-
24 8 at 30:9-20, 34:2-10.) Plaintiff repeated that he could not stand and sit in the wheelchair on his own.
25 (Doc. 51-8 at 29:15-21.) Accordingly, Defendant Smith grabbed Plaintiff, lifted Plaintiff off the floor,
26 and placed Plaintiff in the wheelchair. (Id. at 14-15.) Defendant Smith then retrieved a bed sheet and
27 tied the sheet around Plaintiff to secure him to the wheelchair. (Id. at 15.)

28 Defendant Smith's actions were reasonable under the circumstances. Again, some quantum of

1  force was clearly needed in this situation.  Had Defendant Smith not taken the action he did, Plaintiff
2  would have remained on the ground, unable to receive medical treatment.  Plaintiff does allege that he
3  suffered some initial pain when Defendant Smith bent his knees so that he could be secured to the
4  wheelchair.[3]  (Doc. 1 at 15.)  Nevertheless, not every malevolent touch by a prison guard gives rise to
5  an Eighth Amendment violation.  See Hudson, 503 U.S. at 9.  "[O]nly the unnecessary and wanton
6  infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."
7  Whitley, 475 U.S. at 319 (citations and internal quotation marks omitted).  Here, there is no evidence
8  that the pain Plaintiff incurred was avoidable or that Plaintiff suffered an unnecessary, lasting injury as
9  a result of Defendant Smith's actions.

10  Accordingly, because no reasonable jury could conclude based on the evidence presented that
11  Defendant Smith used malicious and sadistic force against Plaintiff, Defendant Smith is entitled to
12  summary judgment on this claim.

13             6.  Defendant Peters

14  Defendant Peters argues that he is entitled to summary judgment on Plaintiff's excessive force
15  claim.  Defendant Peters maintains that there is no evidence demonstrating that he participated in any
16  use of force against Plaintiff.  (See Doc. 51-1 at 11.)

17  The undisputed evidence establishes that Defendant Peters did not use force, let alone malicious
18  and sadistic force, against Plaintiff.   Defendant Peters arrived only after Defendant Gonzales, among
19  others, had already allegedly used excessive force against Plaintiff. (Doc. 1 at 12; see Doc. 51-8 at 32:2-
20  14.)  Moreover, there is no evidence demonstrating that Defendant Peters authorized those events or
21  participated in any other use of force against Plaintiff.  In fact, Plaintiff does not even argue that such
22  was the case.

23  Accordingly, because no reasonable jury could conclude based on the evidence presented that
24  Defendant Peters used malicious and sadistic force against Plaintiff, Defendant Peters is entitled to
25  summary judgment on this claim.

26  ///

27  ───────────────

28     [3]  Importantly, at his deposition, Plaintiff admitted that Correctional Officer Vogel, not Defendant Smith, bent
Plaintiff's knee while he was being secured to the wheelchair.  (Doc. 51-8 at 34:22-25.)

1              7.    Defendants Sullivan and Montoya

2       In his complaint, Plaintiff appears to set forth claims for excessive force against Defendants

3  Sullivan and Montoya. (See Doc. 1 at 20.) However, according to his deposition, Plaintiff appears to

4  have retracted those claims. (Doc. 51-8 at 68:17-69:4.) In fact, based on Plaintiff's representations at

5  his deposition, Defendants Sullivan and Montoya have apparently elected not to move for summary

6  judgment with respect to the use of excessive force.

7       To the extent that any uncertainty remains, the Court finds, sua spone, that Plaintiff does not

8  allege any cognizable excessive force claims against Defendant Sullivan or Montoya. See 28 U.S.C. §

9  1915(e)(2) ("the court shall dismiss the case at any time if the court determines that . . . the action fails

10 to state a claim"); see also Byrd v. Maricopa County Sheriff's Department, 565 F.3d 1205, 1212 (9th

11 Cir. 2009) (affirming district court's sua sponte dismissal of a prisoner's equal protection claim even

12 though the defendants did not move for summary judgment on the claim). Similar to Defendant Peters,

13 Defendants Sullivan and Montoya only arrived after the alleged use of excessive force by Defendant

14 Gonzales. Moreover, there is no indication that Defendant Sullivan or Montoya used any force during

15 their respective medical examinations of Plaintiff. Thus, there are no facts or proof demonstrating that

16 Defendant Sullivan or Montoya applied force maliciously and sadistically for the purpose of causing

17 Plaintiff harm.

18       **B.    Eighth Amendment – Inadequate Medical Care**

19      To establish a violation of the Eighth Amendment based on inadequate medical care, a plaintiff

20 must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

21 medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). In other words, the plaintiff must show

22 the existence of (1) a serious medical need and (2) a deliberately indifferent response by the defendant.

23 Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

24      A medical need is serious "if the failure to treat the condition could result in further significant

25 injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059

26 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir.

27 1997). Indications that a person has a serious need for medical treatment include: the existence of an

28 injury that a reasonable doctor or patient would find worthy of comment or treatment; the presence of

13

a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citations omitted).

A defendant acts with deliberate indifference when he knowingly fails to respond to a serious medical need, thereby inflicting harm on the plaintiff. See Farmer v. Brennan, 511 U.S. 825, 837-42 (1994); Jett, 439 F.3d at 1096. Deliberate indifference may appear when a defendant denies, delays, or otherwise interferes with medical treatment. See Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Nevertheless, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). A difference in opinion between a physician and his patient over the best course of treatment is also insufficient to demonstrate deliberate indifference. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In this case, Defendants Sullivan, Montoya, and Peters argue that they are entitled to summary judgment on Plaintiff's inadequate medical care claims because there is no evidence demonstrating that they acted with deliberate indifference. (Doc. 51-1 at 7-8, 11.) The Court agrees.

The undisputed evidence demonstrates that Plaintiff was not harmed by the actions, or inaction, of Defendants Sullivan, Montoya, and Peters. Despite some initial hesitation, Defendants Sullivan, Montoya, and Peters provided Plaintiff medical attention. Specifically, Defendant Sullivan informed her supervisor that Plaintiff requested medical treatment. (Doc. 51-5 at ¶ 5; Doc. 71 at ¶ 21.) Defendant Montoya then examined Plaintiff and evaluated Plaintiff's complaints of pain. (Doc. 51-5 at ¶ 6; see Doc. 1 at 14.) Finally, Defendant Peters had Plaintiff transported to the prison hospital where Plaintiff underwent x-rays and received relief for his pain. (Doc. 1 at 15-16.)

Because Plaintiff was ultimately afforded medical treatment and because there is no indication that Plaintiff suffered further harm while waiting for treatment, the Court concludes that Defendants Sullivan, Montoya, and Peters are entitled to summary judgment on Plaintiff's Eighth Amendment inadequate medical care claims.

**C.     First Amendment – Retaliation**

Under the First Amendment, prison officials may not retaliate against prisoners for initiating

litigation or filing administrative grievances. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting <u>Rhodes</u>, 408 F.3d at 567-68).

### 1. <u>Defendants Gonzales and Thomas</u>

Defendants Gonzales and Thomas contend that summary judgment should be entered in their favor because there is no evidence satisfying element two (causation) or element five (no penological purpose) with respect to Plaintiff's First Amendment retaliation claims against them. (<u>See</u> Doc. 51-1 at 9.) Defendant Gonzales and Thomas maintain that neither of them had knowledge of Plaintiff's August 21, 2006 or October 29, 2006 grievances and both of them acted in furtherance of a legitimate penological purpose on October 30, 2006. (<u>Id</u>.) As evidence in support of their argument, Defendants Gonzales and Thomas have each provided a declaration stating inasmuch. (<u>See</u> Doc. 51-3 at ¶¶ 8-9; Doc. 51-4 at ¶¶ 7-8.)

The Court finds that Defendants Gonzales and Thomas are not entitled to summary judgment based on their argument that their actions reasonably advanced a legitimate penological purpose. As explained above, there is a triable issue as to whether Defendants Gonzales and Thomas used force in a good faith effort to maintain discipline or maliciously and sadistically to cause Plaintiff harm. If the jury finds the latter, it follows that the actions of Defendants Gonzales and Thomas did not serve any legitimate penological purpose.

With respect to the defendants' knowledge, Plaintiff has produced evidence that the defendants were aware of Plaintiff's grievances. Plaintiff asserts in his own declaration that on October 30, 2006, just hours before the alleged excessive force incident, Defendants Gonzales and Thomas stated over the tier, "Motherfuckers pulling on their little black ass dicks. Then when they get caught, they want to file staff complaints[.]" (Doc. 72 at ¶ 3.) It can reasonably be inferred from these remarks that Defendants Gonzales and Thomas were aware that Plaintiff submitted a grievance the day before complaining that Officer Aguilar accused him of masturbating.

15

The declaration of Inmate Fields provides further circumstantial evidence to support Plaintiff's position. Therein, Inmate Fields confirms that Defendants Gonzales and Thomas made the statements regarding prisoners masturbating and filing staff complaints once they are caught. (Doc. 71 at 16.) Further, Inmate Fields avers that just after Defendants Gonzales and Thomas made the remarks, he had a heated conversation with the two defendants regarding the right of Plaintiff and other inmates to file staff complaints. (Id.) Apparently, Inmate Fields knew Defendants Gonzales' and Thomas' comments were directed toward Plaintiff because Inmate Fields had helped Plaintiff draft his grievance against Officer Aguilar the day before. (Id.) Inmate Fields asserts that at one point in the heated conversation Defendant Gonzales stated, "We [will] see what rights [you inmates] have," and Defendant Thomas responded, "Yeah, remember that." (Id.)

Drawing all reasonable inferences from the evidence presented, the Court finds that there is a genuine issue of material fact as to whether Defendants Gonzales and Thomas had any knowledge of Plaintiff's grievances, in particular the grievance filed by Plaintiff against Officer Aguilar on October 29, 2006. Accordingly, the Court concludes that Defendants Gonzales and Thomas are not entitled to summary judgment on Plaintiff's First Amendment retaliation claims.

### 2. Defendants Sullivan and Montoya

Defendants Sullivan and Montoya contend that summary judgment should be entered in their favor because (1) they did not have knowledge of Plaintiff's grievances; and (2) they did not take any adverse action against Plaintiff. (Doc. 51-1 at 9.) As evidence in support of their argument, Defendants Sullivan and Montoya have each provided a declaration stating, among other things, that they were not aware Plaintiff filed a grievance on August 21, 2006 or on October 29, 2006. (Doc. 51-5 at ¶¶ 8-9; Doc 51-6 at ¶¶ 7-8.)

In response, Plaintiff has offered no evidence showing the contrary. Plaintiff has not alleged facts in his pleadings indicating that Defendant Sullivan or Montoya had any knowledge of Plaintiff's grievances. Nor has Plaintiff presented any evidence or argument addressing this issue in his opposition to Defendants' motion for summary judgment. Tellingly, when asked at his deposition if he could recall a time when Defendant Sullivan or Montoya mentioned or discussed the grievance that Plaintiff alleges caused the defendants to retaliate, Plaintiff responded, "No." (Doc. 51-8 at 49:1-19.)

The undisputed evidence therefore shows that Defendants Sullivan and Montoya did not have knowledge of Plaintiff's grievances. Without such knowledge, the actions of Defendants Sullivan and Montoya, whether adverse or not, could not have been substantially motivated by Plaintiff's filing of grievances. See Brodheim, 584 F.3d at 1271 ("To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'") (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Thus, Defendants Sullivan and Montoya are entitled to summary judgment on Plaintiff's First Amendment retaliation claims.

### 3. Defendants Beltran, Marin, and Peters

In his complaint, Plaintiff claims that Defendants Beltran, Marin, and Peters retaliated against him for filing grievances. (Doc. 1 at 18-19.) However, according to his deposition, Plaintiff appears to have retracted those claims. (Doc. 51-8 at 68:1-16.) Also, Defendants Beltran, Marin, and Peters appear to have relied on Plaintiff's representations made at his deposition in deciding not to move for summary judgment on the matter.

In any event, the Court finds, sua sponte, that Plaintiff fails to state cognizable retaliation claims against Defendants Beltran, Marin, and Peters. See 28 U.S.C. § 1915(e)(2); Byrd, 565 F.3d at 1212. Like Defendants Sullivan and Montoya, there are no facts in the complaint or in Plaintiff's opposition demonstrating that Defendant Beltran, Marin, or Peters had any knowledge of Plaintiff's grievances. Accordingly, to the extent that Plaintiff does assert that these defendants retaliated against him due to his grievances, his assertions fail to state a claim.

### D.   **Qualified Immunity**

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009).

17

Determining whether an official is entitled to qualified immunity requires a two-part analysis. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, a court must decide whether the facts alleged, when taken in the light most favorable to the plaintiff, show that the official's conduct violated a statutory or constitutional right. Id. Second, the court must determine whether the statutory or constitutional right was "clearly established." Id. A right is "clearly established" in the context of qualified immunity if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law [at the time of the violation] gave 'fair warning' to the official[] that [his] conduct was unconstitutional." Clement, 298 F.3d at 906 (quoting Saucier, 533 U.S. at 202).

Although it is often beneficial to address the two-party inquiry in the sequence outlined above, it is not mandatory. Pearson, 129 S. Ct. at 818. A court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id. A court may grant qualified immunity and dismiss a plaintiff's claims at any point the court answers either prong in the negative. See, e.g., Tibbetts v. Kulongoski, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassing the first prong and granting the defendants qualified immunity because the plaintiff's due process claim was not a clearly established right at the time of the alleged violation).

### 1. Excessive Force[4]

Defendants Gonzales, Thomas, and Beltran are not entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force claims. The facts viewed in the light most favorable to Plaintiff show that Plaintiff was beaten and restrained for no reason other than retaliation. Plaintiff's right to be free from such use of force by prison officials was clearly established by the U.S. Supreme Court's decisions in Whitley and Hudson. Therefore, no reasonable official could have believed that such conduct was lawful.

### 2. Retaliation[5]

Defendants Gonzales and Thomas are also not entitled to qualified immunity on Plaintiff's First

---

[4] In light of the Court's conclusion that there is a triable issue of fact only with respect to Defendants Gonzales, Thomas, and Beltran on Plaintiff's excessive force claims, the Court will only discuss qualified immunity in the context of excessive force as it pertains to these defendants.

[5] In light of the Court's conclusion that there is a triable issue of fact only with respect to Defendants Gonzales and Thomas on Plaintiff's retaliation claims, the Court will only discuss qualified immunity in the context of retaliation as it pertains to these defendants.

Amendment retaliation claims. First, as explained in detail above, the facts viewed in the light most favorable to Plaintiff demonstrate a violation of the First Amendment. Second, the state of the law at the time of the alleged events certainly gave Defendants Gonzales and Thomas fair notice that their actions amounted to a constitutional violation. It has been clearly established law for quite some time now that prison officials violate the First Amendment when they retaliate against prisoners for filing grievances. See Brodheim, 584 F.3d at 1269; Rhodes, 408 F.3d at 567; Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

## IV.  CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED** that:

1. Defendants' August 31, 2010 motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The motion of Defendants Gonzales, Thomas, and Beltran on Plaintiff's Eighth Amendment claims of excessive force is **DENIED**;

    b. The motion of Defendants Marin, Smith, and Peters on Plaintiff's Eighth Amendment claims of excessive force is **GRANTED**;

    c. The motion of Defendants Sullivan, Montoya, and Peters on Plaintiff's Eighth Amendment claim based upon inadequate medical care is **GRANTED**;

    d. The motion of Defendants Gonzales and Thomas on Plaintiff's First Amendment claims of retaliation is **DENIED**; and

    e. The motion of Defendants Sullivan and Montoya on Plaintiff's First Amendment claims of retaliation is **GRANTED**.

2. Plaintiff's Eighth Amendment claims of excessive force against Defendants Sullivan and Montoya are **DISMISSED**; and

3. Plaintiff's First Amendment claims of retaliation against Defendants Marin, Beltran, and Peters are **DISMISSED**.

IT IS SO ORDERED.

Dated:  **August 19, 2011**                          **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE